Bashir Ghazialam (CA Bar No. 212724)
Kirsten Zittlau (CA Bar No. 220809)
LAW OFFICES OF BASHIR GHAZIALAM
P.O. Box 928167
San Diego, California 92192
Tel: (619) 795-3370
Fax: (866) 685-4543
bg@lobg.net

Attorneys for Petitioners

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO GAMINO CORONA, MARGARITA SANCHEZ PEREZ<br><br>                    Petitioners-Plaintiffs,<br><br>v.<br><br>ERNESTO SANTACRUZ, JR., in his official capacity as Acting ICE Field Office Director, U.S. Immigration and Customs Enforcement;<br>TODD M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement;<br>JOSEPH B. EDLOW, Director of U.S. Citizenship and Immigration Services;<br>KRISTI NOEM, Secretary of United States Department of Homeland Security; and<br>PAM BONDI, Attorney General of the United States;<br><br>                 Respondents-Defendants. | Case No.:  8:25-cv-2108<br><br>Agency File Nos.:<br>FRANCISCO GAMINO CORONA, Alien # 095 450 407 ;<br>MARGARITA SANCHEZ PEREZ, Alien # 095 450 408<br><br>**PETITION FOR WRIT OF HABEAS CORPUS AND ORDER TO SHOW CAUSE WITHIN THREE DAYS; COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; COMPLAINT IN THE NATURE OF MANDAMUS ARISING FROM RESPONDENTS' REFUSAL TO ACCEPT AND ADJUDICATE PETITIONERS' VAWA PETITIONS AND ADJUSTMENT OF STATUS APPLICATIONS** |

Petitioners-Plaintiffs (hereinafter, "Petitioners" or "Plaintiffs") FRANCISCO GAMINO CORONA, MARGARITA SANCHEZ PEREZ petition this Court for a writ of habeas corpus under 28 U.S.C. § 2241 to remedy Respondents' detaining them unlawfully, and state as follows:

## INTRODUCTION AND STATEMENT OF FACTS

1.    Petitioner Francisco Gamino Corona (Mr. Gamino Corona) is a fifty-seven-year-old man with various health conditions, including Hypokalemia and cirrhosis causing partial paralysis, muscle pain, and neurological condition diagnosed since 2018, He is presently detained at the ICE ERO holding facility in Santa Ana, California.

2.    Petitioner Margarita Sanchez Perez (Mrs. Sanchez Perez) is a fifty-nine-year-old woman and the spouse of Mr. Gamino Corona, with various health conditions, including diabetes, heart condition, and high blood pressure, and recently underwent eye surgery on one of her eyes and is scheduled for surgery on her other eye, detained at the ICE ERO holding facility in Santa Ana, California.

3.    Petitioners submit this habeas petition under 28 U.S.C. § 2241 for a judicial check on Respondents' unlawful revocation of their release and their detention without belief that their removal from the United States is reasonably foreseeable.

4.    Petitioners further bring this action to compel Defendants to accept, issue receipt notices, and adjudicate their VAWA petitions and applications for adjustment of

status which Petitioners mailed to USCIS on June 3, 2025, and to date, USCIS has taken no action on the same.

5.      Petitioners, husband and wife, are law-abiding, long-time residents of the United States and natives and citizens of Mexico. They entered the United States, separately, in 1989 without submitting to an inspection by proper immigration authorities and they have not exited the United States. They are the parents of two adult citizen of the United States.

6.      In May 2002, the Plaintiffs sought lawful permanent residence and were referred by friends to Roberto Ferandez, the general director of La Guadalupana immigration Services in Santa Ana, California. On May 31, 2002, they met with Mr. Fernandez and were informed they were eligible to apply for "green cards" and government issued employment authorization cards based on their long-term residence in the United States and the birth of their son. Mr. Fernandez charged Plaintiffs $9,000.00 to get them employment authorization cards and to file an application for cancellation of removal. Instead, he fraudulently filed an application for political asylum with the Immigration Service. Mr. Fernandez then contracted with attorney Joubin Nasseri to represent the Plaintiffs while simultaneously executing a contract with Guadalupe immigration Services. Mr. Fernandez collected all legal fees for both Guadalupe Services and attorney Nasseri.

7.      Mr. Fernandez's representation ended when he was arrested by the Santa Ana police and his office was closed. The Orange County District Attorney's Office seized all

3

immigration files. Mr. Fernandez later jumped bail and fled to Mexico where he remains a fugitive from justice.

8.    This lawyer was involved in an active conspiracy with Roberto Fernandez who acted as an agent issuing both legal service contracts and signing G-28s. Retainers and monthly fees were collected by Mr. Fernandez. Attorneys Tarigo and Nasseri ceased to represent their clients after Mr. Fernandez was arrested and their operation shut down.

9.    Attorney D'Carpio maintained an office across the street from Mr. Fernandez. When the District Attorney shut down Mr. Fernandez's operation many defrauded aliens came down to the office to try to get their files returned. Attorney D'Carpio would stand in front of Mr. Fernandez's office and would hand out his business card soliciting clients.

10.    Attorney D'Carpio entered the Plaintiffs' case and failed to put the Plaintiffs' then 14-year-old U.S. citizen child on the witness stand to explain his own hardship, and he told the Plaintiffs' psychologist not to come the merits hearing. The Judge had previously continued the case to give the Plaintiffs an opportunity to have the psychologist Appear before the court.

11.    On March 28, 2005, Plaintiffs were ordered removed by the Immigration Judge.

12.    Attorney D'Carpio also defrauded the Plaintiffs when he filed an appeal and a motion to reopen with the BIA in pro per without advising his clients. Attorney D'Carpio

4

also filed a pro per petition for review with the Ninth Circuit Court of Appeals which was summarily dismissed because he raised no justiciable issues.

13.     In the years subsequent to being defrauded and receiving the ineffective assistance of their former attorneys, as well as being victims of the criminal conspiracy among Mr. Fernandez and attorneys Tarigo and Nasseri, Plaintiffs had been on ICE orders of supervision since 2014 and had been applying for and receiving ICE Stays of Removal each year since due to their failing health and disabilities.

14.     At the time of the initial proceedings, Plaintiffs did not pursue their asylum claims because in Mexico, their country of nationality, the conditions relating to Plaintiffs did not place Plaintiffs in fear of persecution there.  However, due to materially changed country conditions in Mexico, Plaintiffs now have a genuine fear of persecution.

15.     In recent years, the cartel and other organized criminal groups in Mexico have been kidnapping various individuals who have money, or who have or are conceived to have access to money in exchange for returning them alive. In addition, they have started targeting ranchers, stealing their cattle such as cows, goats, and calves. Moreover, assassins target and killed people who opposed or reported such criminal conduct.

16.     Then the hit men have started to kidnap the taxi drivers and also robbed and killed them. A taxi driver who was Plaintiff's Godfather was killed.

17.     In 2015 Plaintiff's sisters sold food in the city of Ciudad Altamirano, Guerrero, in a Restaurant and was targeted for extortion money in exchange for the ability

to continue selling food. They demanded payments every month. They had tapped the phones, they cut the internet, and they own the town and have a curfew. They beat and kill people who go out in the streets in violation of the curfew. There came a time when Plaintiff's sisters no longer had money to continue paying the extortion fees, and in about end of 2016, they went to live in Huetamo, Michoacán, along with Plaintiff's mother. However, when they arrived there, they witnessed and became the target of kidnappings. The threats continued despite the sisters and mother moving.

18.    Every day that has passed recently, Plaintiffs hear or learn about new kidnappings for ransom of additional relatives and acquaintances and their children. Unfortunately, many of them are unable to come up with the ransom money and are forced to ask for help from others who do have money. The consequence of nonpayment is certain death.

19.    They do not report these kidnappings to the police due to retribution as the police are tied to the criminals, as well as due to the fact that the police are not able nor willing to protect them.

20.    Plaintiffs and their relatives back home are afraid that if sent back to Mexico they will be perceived to have money and the family will become an even bigger target for kidnapping and extortion. Even if they do not have money, they will be forced to ask for money from acquaintances here in the United States. Plaintiff Margarita SANCHEZ PEREZ's mother is afraid because she has a house and the knowledge that Plaintiffs

presence in Mexico will endanger the entire family. Plaintiffs have resided in the U.S. for over three decades and have U.S. Citizen children.

21.    On November 30, 2010, Plaintiff Margarita SANCHEZ PEREZ's cousin who worked as a taxi driver in Ciudad Altamirano, Guerrero was kidnapped, tortured and killed him for not paying his extortion fees. The next day they found him dead, with marks of torture on his body and disfigured face. The family was afraid and always complied with paying their dues in the stores they were dedicated to avoid being abducted and killed. His sister, who has a food stand in the market was threatened because she expressed her opinion which was opposed to the fee collectors, and when she refused to stop expressing her opinions, one night this past January 2018, they burned her car, scaring the family to the degree where they were afraid to go outside to extinguish the flames.

22.    Plaintiff Margarita SANCHEZ PEREZ's mother and sister still have their beverage stand which supports their day to day lives, but they are only able to continue operations because they continue to pay their quota. Otherwise, they will sure be killed or tortured just like our other family members.

23.    Recently, Plaintiff Margarita SANCHEZ PEREZ's two friends were also kidnapped for ransom, one of whom was able to come up with the money was released, while the other one who was not so fortunate, was tortured and killed.

24.    Furthermore, Plaintiff Francisco GAMINO CORONA has been diagnosed with Hypokalemia and cirrhosis causing partial paralysis. Neurons from his brain do not

send signals to his leg and as a result, he cannot walk well and has difficulty with mobility. His brother Andrés Gamino died of cirrhosis. His doctors have told him that with the passage of time, he will not have leg movement. Also, when he gets nervous, his mind and body paralyzes and he is not able to move at all. In Mexico, particularly in the city of Ciudad Altamirano, Guerrero he will not be able to receive any treatment or cure due to lack of income and money, as well as due to a very poor healthcare system as well as widespread discrimination in the healthcare system. Also, Plaintiff will be refused medical help because he has never worked in Mexico "to have the right" to be cared there.

25.    Additionally, there is a severe shortage of doctors in Mexico because they are the prime targets for kidnapping and extortion there. Medicine is also scarce or no available. The situation for the disabled and physically immobile individuals is even more compounded by the criminals and cartels closing the roads so that the medicines and doctors from the nearby regions do not enter.

26.    Therefore, on April 26, 2018, Plaintiffs, via their undersigned pro bono counsel, filed an emergency motion to reopen and remand removal proceedings based on material changes in the Plaintiffs' home country's conditions, and for stay of removal. The motion to reopen which was later dismissed by the BIA, and Plaintiffs timely appealed that decision with the Ninth Circuit Court of Appeals. That petition for review with the Ninth Circuit remains pending.

27.     Moreover, on June 3, 2025, Plaintiffs submitted VAWA self-petitions and applications for adjustment of status to the USCIS. However, despite receiving the same, USCIS has not issued an receipt notices or began the adjudication of these petitions and applications. If and when the USCIS accepts and grants Plaintiffs' VAWA petitions and adjustment of status applications, then Plaintiffs would not be removed and able to reside lawfully in the United States, and it will provide a basis for Plaintiffs' removal proceedings to be reopened and terminated. If the petitions and applications are denied, then Plaintiffs will have an opportunity to appeal that decision or seek review of the same with this district court pursuant to the Administrative Procedure Act. If Plaintiffs are removed before the USCIS makes a decision, then Plaintiffs will be deprived of their constitutional due process rights of seeking review of their petitions and applications for adjustment of status.

28.     As such, Plaintiffs brings this action to compel the Defendants to accept, receipt and finally adjudicate their pending petitions and applications as required by law.

29.     The Constitution expressly assigns to Congress, not the executive branch, the authority to establish uniform rules of immigration as well as removal. The Immigration and Nationality Act ("INA") sets forth such rules.

30.     When these rules and requirements have been met, as they have been in Plaintiffs' cases, the DOJ and BIA are obligated to take action.

31.     Defendants' refusal to timely adjudicate Plaintiffs petitions and applications has caused and will cause Plaintiffs great hardship. Plaintiffs' prior release on orders of

supervision have been abruptly revoked without any prior notice or reason, and they face imminent removal from the United States.  If the petitions and applications had been receipted in the ordinary course of USCIS business, then according to ICE Officer Hernandez who spoke to Plaintiffs' undersigned counsel over the phone on this date, September 17, 2025, Plaintiffs' Orders of Supervision would not have been revoked, they would not have been detained at their annual checkins, and they would have been allowed to go to their home. If the USCIS had already adjudicated Plaintiffs' petitions and applications, then removal proceedings would have already would have been reopened and terminated, and Plaintiffs would no longer be subject to imminent removal. If the USCIS had denied the petitions or applications, then Plaintiffs would have the opportunity to file appeals of the same or to seek review of the same in this Court, and Plaintiffs have been unable to seek review of the USCIS' decision, and as such, deprived of their constitution due process rights.

32.    Plaintiffs have exhausted all administrative remedies and there are no further administrative acts Plaintiffs can take to obtain the benefits to which they are entitled.

33.    Plaintiffs' arrest would have only been permissible if Respondents could demonstrate that removal could occur "in the reasonably foreseeable future" or if they had violated release conditions—neither of which occurred here. See Zadvydas v. Davis, 533 U.S. 678 (2001); 8 C.F.R. § 241.13(h)(4).

34.     Moreover, even assuming Respondents possessed theoretical authority to revoke Plaintiffs' release, the agency failed to meet mandatory procedural requirements, including the obligation to establish "a significant likelihood that the [non-citizen] may be removed in the reasonably foreseeable future" under 8 C.F.R. §241.13(i)(2) and to provide them with notice of the specific reasons for revocation as 8 C.F.R. § 241.13(i)(3) requires. Respondents' actions were all the more egregious because they occurred well beyond the ninety-day removal period established by law (see 8 U.S.C. § 1231(a)(1)(A)), and after Plaintiffs had continued to live lawfully in his community for several decades.

35.     Due to these due process and regulatory violations of the law, Plaintiffs seek declaratory and injunctive relief to compel their immediate release from the immigration jail where they are being held by Respondents since being unlawfully detained on September 17, 2025, without being provided any notice or opportunity to be heard regarding whether his incarceration is justified.

36.     Absent review in this Court, no other neutral adjudicator will examine Plaintiffs' plight: Respondents will continue—unchecked—to detain them essentially indefinitely. They thus urge this Court to review the lawfulness of their detention; declare that their detention is unlawful and order their immediate release, or at a minimum that Respondents provide them a bond hearing complying with the procedural requirements in Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011).

### CUSTODY

37.     Plaintiffs are currently in Respondents' legal and physical custody. They are detaining Plaintiffs at the Santa Ana / Los Angeles ICE Holding Facility. Plaintiffs are under Respondents' and their agents' direct control.

### PARTIES

38.     Petitioner Francisco Gamino Corona (Mr. Gamino Corona) is a fifty-seven-year-old man with various health conditions, including Hypokalemia and cirrhosis causing partial paralysis, muscle pain, and neurological condition diagnosed since 2018, He is presently detained at the ICE ERO holding facility in Santa Ana, California.

39.     Petitioner Margarita Sanchez Perez (Mrs. Sanchez Perez) is a fifty-nine-year-old woman and the spouse of Mr. Gamino Corona, with various health conditions, including diabetes, heart condition, and high blood pressure, and recently underwent eye surgery on one of her eyes and is scheduled for surgery on her other eye, detained at the ICE ERO holding facility in Santa Ana, California.

40.     Petitioners are currently in Respondents' legal and physical custody at the Santa Ana / Los Angeles ICE Holding Facility.

41.     Respondent ERNESTO SANTACRUZ, JR is the Acting Field Office Director of ICE, in Los Angeles, California and is named in his official capacity. ICE is the component of the DHS that is responsible for detaining and removing noncitizens

according to immigration law and oversees custody determinations. In his official capacity, he is the legal custodian of Petitioner.

42.     Respondent TODD M. LYONS is the Acting Director of ICE and is named in his official capacity. Among other things, ICE is responsible for the administration and enforcement of the immigration laws, including the removal of noncitizens. In his official capacity as head of ICE, he is the legal custodian of Petitioner.

43.     Respondent KRISTI NOEM is the Secretary of the DHS and is named in her official capacity. DHS is the federal agency encompassing ICE, responsible for the administration and enforcement of the INA and all other laws relating to the immigration of noncitizens. As Secretary, Respondent Noem is responsible for the administration and enforcement of the immigration and naturalization laws pursuant to section 402 of the Homeland Security Act of 2002, 107 Pub. L. No. 296, 116 Stat. 2135 (Nov. 25, 2002); *see also* 8 U.S.C. § 1103(a). Respondent Noem is the ultimate legal custodian of Petitioner.

44.     Respondent Pam BONDI is the Attorney General of the United States and the most senior official in the U.S. Department of Justice (DOJ) and is named in her official capacity. She has the authority to interpret the immigration laws and adjudicate removal cases. The Attorney General delegates this responsibility to the Executive Office for Immigration Review (EOIR), which administers the immigration courts and the BIA.

45.    Respondent Joseph B. EDLOW, is the Director of U.S. Citizenship and Immigration Services (USCIS) and is named in his official capacity. He has the authority to interpret the immigration laws and adjudicate immigration benefits petitions and applications.

## JURISDICTION AND VENUE

46.    This action arises under the United States Constitution and the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq., INA § 101 et seq., to challenge Plaintiffs' detention under the INA and any inherent or plenary powers the government may claim to continue holding him.

47.    This Court has jurisdiction under 28 U.S.C. § 2241; Art. I, § 9, cl. 2 of the United States Constitution; and 28 U.S.C. § 1331, as Petitioners is presently in Respondents' custody under the United States' color of authority, and such custody violates the United States' Constitution, laws, or treaties. Its jurisdiction is not limited by a petitioner's nationality, status as an immigrant, or any other classification. *See Boumediene v. Bush*, 553 U.S. 723, 747 (2008). This Court may grant relief under U.S. CONST. art. I, § 9, cl. 2; U.S. CONST. amends. V and VIII; 28 U.S.C. §§ 1361 (mandamus), 1651 (All Writs Act), 2241 (habeas corpus).

48.    Specifically, this Court has jurisdiction under 28 U.S.C. § 2241 to review Plaintiffs' detention. Federal district courts possess broad authority to issue writs of habeas corpus when a person is held "in custody in violation of the Constitution or laws or treaties

14

of the United States" (28 U.S.C. § 2241(c)(3)), and this authority extends to immigration detention challenges that survived the REAL ID Act's jurisdictional restrictions.

49.    Because Plaintiffs seek the traditional habeas remedy of release from allegedly unlawful detention rather than additional administrative review of their underlying claims, their petition presents precisely the type of threshold legality-of-detention question that § 2241 was designed to address. *See INS v. St. Cyr*, 533 U.S. 289, 301 (2001); *see also Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh,* 638 F.3d at 1211-12)). And no court has ruled on the legality of Petitioners' detention.

50.    Furthermore, this Honorable Court has federal question jurisdiction over this cause pursuant to 28 U.S.C. § 1331, as it raises claims under the Constitution of the United States, the INA, 8 U.S.C. § 1101 et seq., and the APA, 5 U.S.C. § 701 et seq, in conjunction with the Mandamus Act, 28 USC § 1361.

51.    Venue is proper in this District under 28 U.S.C. §§ 1391(b)(2) and (e)(1) because a substantial part of the events or omissions giving rise to this claim have happened here, Petitioners is detained here, and his custodian resides here. Venue is also proper under 28 U.S.C. § 2243 because Plaintiffs' immediate custodian resides in this District. *See Rumsfeld v. Padilla*, 542 U.S. 426, 451-52 (2004) (Kennedy, J., concurring).

## REQUIREMENTS OF 28 U.S.C. § 2243

52.    The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to Respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an OSC is issued, the Court must require Respondents to file a return "within *three days* unless for good cause additional time, *not exceeding twenty days*, is allowed." *Id.* (emphasis added).

53.    Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

54.    Habeas corpus must remain a swift remedy. Importantly, "The statute itself directs courts to give petitions for habeas corpus 'special, preferential consideration to insure expeditious hearing and determination.'" *Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000) (internal citations omitted). The Ninth Circuit warned against any action creating the perception "that courts are more concerned with efficient trial management than with the vindication of constitutional rights." *Id.*

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

55.    For habeas claims, exhaustion of administrative remedies is prudential, not jurisdictional. *Hernandez v.* Sessions, 872 F.3d 976, 988 (9th Cir. 2017). A court may

waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Id.* (*quoting Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (citation and quotation marks omitted)). Petitioner asserts that exhaustion should be waived because administrative remedies are (1) futile and (2) his continued detention results in irreparable harm.

56.    Exhausting administrative remedies here is futile – this action is only necessary because ICE refuses to release Petitioners and an IJ does not have jurisdiction to redetermine Petitioners' custody.

57.    Moreover, no statutory exhaustion requirements apply to Petitioner's claim of unlawful custody in violation of his due process rights, and there are no administrative remedies that he needs to exhaust. *See Am.-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1058 (9th Cir. 1995) (finding exhaustion to be a "futile exercise because the agency does not have jurisdiction to review" constitutional claims); *In re Indefinite Det. Cases*, 82 F. Supp. 2d 1098, 1099 (C.D. Cal. 2000) (same).

58.    More importantly, every day that Petitioner remains detained causes him harm that cannot be repaired. His continued detention puts his physical and mental health at greater risk, further warranting a finding of irreparable harm and the waiver of the prudential exhaustion requirement. The Court must consider this in its irreparable harm analysis of the effects on Petitioner as his detention continues into the fourth month (as of

the time of filing of this action). *See De Paz Sales v. Barr*, No. 19-CV-07221-KAW, 2020 WL 353465, at *4 (N.D. Cal. Jan. 21, 2020) (noting that the petitioner "continues to suffer significant psychological effects from his detention, including anxiety caused by the threats of other inmates and two suicide attempts," in finding that petitioner would suffer irreparable harm warranting waiver of exhaustion requirement).

**LEGAL FRAMEWORK**

59.   Section 1231(a) of Title 8 governs the detention of individuals whom immigration courts have ordered removed. The statute commands ICE to detain

60.   these individuals for ninety days while it executes the removal order. See 8 U.S.C. § 1231(a)(2). The ninety-day removal period starts the moment the removal order becomes final. Absent an applicable exception, ICE must release the person under supervision if it cannot complete removal within ninety days. See 8 U.S.C. § 1231(a)(3).

61.   Subsection 1231(a)(6) authorizes ICE to extend detention beyond the ninety-day period, yet it bars indefinite custody. See Zadvydas v. Davis, 533 U.S. 678, 689 (2001) (limiting ICE's authority to a period "reasonably necessary" to carry out removal and prohibiting detention when removal is not "reasonably foreseeable").

62.   Regulations allow ICE to release a non-citizen after the ninety-day removal period if the agency determines that the non-citizen "would not pose a danger to the public or a risk of flight, without regard to the likelihood of the [non-citizen's] removal in the reasonably foreseeable future." 8 C.F.R. § 241.13(b)(1).

18

63.    ICE may withdraw release approval if it can effectuate removal "in the reasonably foreseeable future" or if the non-citizen violates the release conditions. 8 C.F.R. § 241.13(h)(4). ICE may revoke release only when "there is a significant likelihood that the [non-citizen] may be removed in the reasonably foreseeable future." Id. § 241.13(i)(2). Upon revocation, ICE must notify the non-citizen of the reasons for the revocation. Id. § 241.13(i)(3).

64.    Moreover, under the Administrative Procedures Act ("APA"), an agency must act in a manner that is not arbitrary or capricious. See 5 U.S.C. § 706(2)(A) (directing courts to "hold unlawful and set aside agency action" that is arbitrary and capricious); Dep't of Com. v. New York, 139 S. Ct. 2551, 2569 (2019) (requiring an agency to articulate a "satisfactory explanation" for its action, "including a rational connection between the facts found and the choice made").

65.    Furthermore, immigration detention should not be used as a punishment and should only be used when, under an individualized determination, a noncitizen is a flight risk because they are unlikely to appear for immigration court or a danger to the community. Zadvydas, 533 U.S. at 690.

66.    "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Id. "[T]he Due Process Clause applies to all 'persons' within the United States,

including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Id. at 693.

## **FIRST CAUSE OF ACTION**

### **Violation of Due Process**
### **U.S. Constitution Amendment V**

67.    Petitioners re-allege and incorporate by reference, as if fully set forth herein, the allegations in the paragraphs above.

68.    The Due Process Clause of the Fifth Amendment to the U.S. Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. Amend. V. Due process protects "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693.

69.    Here, neither Petitioners nor their counsel were advised by Respondents that they sought to detain them. Moreover, Petitioners were detained despite there being no evidence that they are a danger to the community or a flight risk. No conditions had changed since their release on order of supervision over a decade ago – in fact, Petitioners have only developed more ties to the U.S. and have significant medical conditions that make them even less of a flight risk now. Yet Petitioners were detained without any opportunity to even be heard on these issues.

70.     Detention violates 8 U.S.C. § 1231 and the Due Process Clause of the United States Constitution unless it is reasonably related to the government's purpose of preventing flight and protecting the community. Zadvydas, 533 U.S. at 690-91.

71.     Before being re-detained, Petitioners lived in the community for over a decade in compliance with the law. And they have received no process to determine whether their re-detention is warranted.

72.     Petitioners are entitled to an individualized determination by impartial adjudicators as to whether detention is justified based on danger or flight. See Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011); see also Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (requiring notice and an opportunity to be heard before deprivation of a legally protected interest).

## SECOND CAUSE OF ACTION

**Violation of Due Process Clause of the U.S. Constitution**
**Unlawful Detention – Removal Not Reasonably Foreseeable**

73.     Petitioners re-allege and incorporate by reference, as if fully set forth herein, the allegations in the paragraphs above.

74.     Post-removal order detention violates 8 U.S.C. § 1231(a)(6) where removal is not significantly likely to occur in the reasonably foreseeable future. See Zadvydas, 533 U.S. at 701.

75.     Detention where removal is not reasonably foreseeable also violates due process.

21

76.     The ninety-day removal period ended over a decade ago. And ICE determined it could not effectuate Petitioners' removal and released them. Given that the government did not and in the intervening years has not removed them, Petitioners have made an initial showing that their removal is not significantly likely. <u>Zadvydas</u>, <u>533 U.S. at 701</u>.

77.     Respondents cannot rebut this showing and. Petitioners' re-detention under these circumstances violates <u>8 U.S.C. § 1231</u> and the Due Process Clause under the United States Constitution. Petitioners are entitled to immediate release.

## THIRD CAUSE OF ACTION

**Violation of <u>5 U.S.C. § 706(a)(2)(A)</u> and <u>8 C.F.R. § 241.13(i)(2)</u>**
**Unlawful Revocation of Release**

78.     Petitioners re-allege and incorporate by reference, as if fully set forth herein, the allegations in the paragraphs above.

79.     Petitioners were previously detained by ICE and released because their removal could not occur. As they have complied with all laws of the U.S. since their release, Respondents have the authority to revoke their release only if there is a significant likelihood that they can remove him in the reasonably foreseeable future. See <u>8 C.F.R. § 241.13(i)(2)</u>.

80.     Respondents revoked Petitioners' release without evidence that they can be removed.

81.     Moreover, the governing regulations require Respondents to notify Petitioners of the reason for their re-detention. 8 C.F.R. § 241.13(i)(3). Respondents have not complied with this obligation, nor did they provide Petitioners with an initial interview at which they could respond to the purported reasons for revocation.

82.     Respondents' actions in failing to abide by their own regulations are arbitrary, capricious, an abuse of discretion, and contrary to the Administrative Procedures Act. 5 U.S.C. § 706(a)(2)(A). As such, Petitioners are entitled to immediate release.

## FOURTH CAUSE OF ACTION

83.     Petitioners re-allege and incorporate by reference, as if fully set forth herein, the allegations in the paragraphs above.

84.     Defendants' failure to accept, receipt and adjudicate Plaintiffs' VAWA petitions and adjustment of status applications constitutes an unreasonable failure to act in violation of the Administrative Procedures Act and denies Plaintiffs due process and equal protection of the laws guaranteed by the Fifth Amendment of the United States Constitution.

## FIFTH CAUSE OF ACTION

85.     Petitioners re-allege and incorporate by reference, as if fully set forth herein, the allegations in the paragraphs above.

86.     Defendants' refusal to accept, receipt and adjudicate the VAWA petitions and applications for adjustment of status before their removal from the United States violates

the Immigration and Nationality Act, Department Regulations and policies, the Administrative Procedures Act, and the Constitution. Plaintiffs have a clear right to the relief requested; Defendants have a clear duty pursuant to the Immigration and Nationality Act as well as Department Regulations and policies to adjudicate Plaintiffs' petitions and applications; and there is no other adequate remedy available.

### **PRAYER FOR RELIEF**

WHEREFORE, the Petitioner prays that this Court grant the following relief:

(1) Assume jurisdiction over this matter;

(2) Issue the writ of habeas corpus and order Respondents to show cause, within three days of Petitioners' filing this petition, why the relief he seeks should not be granted; and set a hearing on this matter within five days of Respondents' return on the order to show cause (*see* 28 U.S.C. § 2243);

(3) Declare that Petitioner's detention without an individualized determination violates the Due Process Clause of the Fifth Amendment;

(4) Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner from custody;

(5) In the alternative, order a constitutionally adequate bond hearing complying with the procedural requirements in Singh where DHS bears the burden of justifying Petitioner's continued detention by clear and convincing evidence and the neutral adjudicator takes into consideration

alternatives to detention and Petitioner's ability to pay a bond;

(6) In the alternative, conduct an immediate bond hearing before this Court where DHS bears the burden of justifying Petitioner's continued detention by clear and convincing evidence and the Court takes into consideration alternatives to detention and Petitioner's ability to pay a bond;

(7) Issue an Order prohibiting the Respondents from transferring Petitioner from the district without the court's approval;

(8) Order Respondents to adjudicate Plaintiffs' VAWA petitions and applications for adjustment of status immediately, or within a reasonable period of time determined by this Court.

(9) Retain jurisdiction during the adjudication of the aforementioned petitions and applications in order to ensure compliance with the Court's orders.

(10)         Award Petitioner attorney's fees and costs under the Equal Access to Justice Act, and on any other basis justified under law; and

(11)         Grant any further relief this Court deems just and proper.

Dated: September 16, 2025                    Respectfully submitted,

By: /s/ Bashir Ghazialam
Bashir Ghazialam
Attorney for Petitioner

## <u>VERIFICATION PURSUANT TO 28 U.S.C. 2242</u>

I am submitting this verification on behalf of the Plaintiffs-Petitioners because I am Plaintiffs-Petitioner's attorney in this action. I have discussed with the Plaintiffs-Petitioner the events described in the Petition. Based on those discussions, I hereby verify that the factual statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Executed on this September 17, 2025, in San Diego, California.


*/s/ Bashir Ghazialam*
Bashir Ghazialam
Attorney for Plaintiffs-Petitioners